UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LARRY RICHARD COX, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. 05-173-B-W |
| | ) |
| MAINE STATE PRISON, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Larry Cox brought this civil rights action complaining that he is being denied programming and rehabilitation opportunities as a protective custody prisoner at the Maine State Prison.[1] The defendants have filed a motion to dismiss (Docket No. 16) to which Cox has not responded. In view of Cox's lack of defense and apparent abandonment of this litigation, I recommend that the Court grant the motion.

*DISCUSSION*

In the motion to dismiss the defendants argue that there are two reasons that the complaint should be dismissed. First, they assert that "it is clear" that Cox is suing the defendants in their official capacity and that such claims run afoul of the State's sovereign immunity. See Wisconsin Dept. of Corr. v. Schacht, 524 U.S. 381, 384 (1998) (citing Kentucky v. Graham, 473 U.S. 159, 165-167 & n.14 (1985)); Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)[2]. However, the immunity of the

---

[1] Cox's complaint also contains the following statement: "Another issue that the plaintiff wishes to be addressed through this 1983 action is the mixing of general population prisoners with protective custody prisoners during visits, allowing general population prisoners in the protective custody unit." (Compl. at 6.)

[2] The defendants' citation to Will v. Michigan Dept. of State Police "clearly" applies to the Maine State Prison which is improperly named as a party defendant in this action under the plain meaning of "person" set forth in 42 U.S.C. § 1983 and would just as clearly apply to the other defendants named in their official capacities were this merely a suit for money damages.

State is immunity from damages and the relief that Cox seeks is injunctive in nature: "I respectfully ask the court to address and rectify these issues through mediation or court order." (Compl. at 3.) Neither the State's sovereign immunity nor its failure to be within the statutory definition of "person" under 42 U.S.C. § 1983 is a shield against the granting of such prospective relief. See Nadeau v. Helgemoe, 561 F.2d 411, 419 n.7 (1st Cir. 1977) and Will v. Michigan Dept. of State Police, 491 U.S. at 71, n.10.

Second, the defendants argue that Cox's complaint fails to state a claim. The fact that Cox has not responded to the motion to dismiss does not relieve me of my obligation, under Federal Rule of Civil Procedure 12(b)(6), to review the complaint to determine whether or not the complaint states a claim sufficient to survive the motion to dismiss. See Pomerleau v. West Springfield Public Schools, 362 F.3d 143, 145-46 (1st Cir. 2004).

Cox's statement of his claim is as follows:

> Martin Magnusson is the Commissioner of Corrections. Mr. Magnusson is involved in this 1983 action by being the head of the Department of Corrections. Mr. Magnusson denies or approves any policy or procedure within the Department of Corrections. Because of the lack of programming, rehabilitative opportunities and equal treatment of protective custody prisoners Mr. Magnusson approved of the disputed policy in this action, thereby making Mr. Magnusson a defendant.
> Jeffrey Merrill is the Warden of the Maine State Prison. Warden Merrill acting in concert with other named defendants has denied protective [custody] prisoners programming, rehabilitative opportunities as well as equal treatment of the protective custody prisoners. Warden Merrill is named as a defendant in this 1983 action because he is the head of the Maine State Prison thereby making any policy and procedure decisions affecting prisoner population and protective custody population.
> Dwight Fowles is named as a defendant in this 1983 action because he is responsible for carrying out the policy and procedures implemented by the other named defendants.
> Brian Abbott is named as a defendant because he is directly responsible for assessing prisoners['] needs, i.e., substance abuse treatment, anger management, educational needs, life skills and technical and professional training.
>     1)     The plaintiff, as a protective custody prisoner, is being denied access to rehabilitation because he is a protective custody prisoner. The programming

    available to general population has been denied to me as a protective custody
    prisoner.  The rehabilitative programs are listed as follows[:]
      []General Equivalent Diploma (GED)
      Basic reading and writing skills
      Life skills
      College courses
      HIV awareness
      Pre-release exit programs
      Bereavement
      Art classes
      Horticulture classes
      Community volunteer programs
   Another issue that the plaintiff wishes to be addressed through this 1983 action
is the mixing of general population prisoners with protective custody prisoner during
visits, allowing general population prisoners in the protective custody unit.

"Substance Abuse Programs"
   Protective custody prisoners such as plaintiff are not allowed access to the full
spectrum of substance abuse treatment available to general population prisoners.
Substance abuse is a major cause of plaintiff's criminal behavior.

"Work Assignments"
   Plaintiff is denied access to paid employment within the prison.  Plaintiff is
denied access to jobs where professional or technical training is provided.  General
population prisoners have access to these programs.

"Recreational and Outside Opportunities"
   Plaintiff is not given recreational privileges available to general population
prisoners. General population prisoners have access to gym, weight room, outside
track, outside softball, as well as other recreational privileges.  Plaintiff has access to a
recreation area that measures only 24 x 36.  Plaintiff shares this area with 65 other
prisoners.

(Compl. at 3-7.)[3]

In my view the claim that Cox makes here is a claim that the policy of the prison apropos the

protective custody inmates violates his constitutional right to equal protection.   I do not view his

complaint as stating a claim under the Fourteenth Amendment due process clause; Cox does not allege

3

that he was denied due process when he was categorized as a protective custody inmate (thereby making him subject to the complained-of restrictions on rehabilitative, educational, and recreational opportunities). Compare Sandin v. Conner, 515 U.S. 472, 483-87 (1995) Nor do I consider this complaint to be alleging an Eighth Amendment cruel and unusual punishment violation. Compare Hudson v. McMillian, 503 U.S. 1, 8-9 (1992); Jackson v. Meachum, 699 F.2d 578, 581 -85 (1st Cir. 1983); see also Rhodes v. Chapman, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation violates the Constitution.").

With respect to Cox's articulated equal protection claim, the First Circuit law[4] on this score remains – as best as I can ascertain – (then Chief) Circuit Judge Coffin's Nadeau v. Helgemoe, 561 F.3d 411 (1st Cir. 1977) in a suit brought by protective custody prisoners in a New Hampshire state

---

[3]    To ease the reading, I have made minor, non-substantive typographical changes to the text of Cox's complaint allegations.

[4]    The defendants cite to an unpublished 1998 decision out of the Northern District of Illinois, Sherman v. Lane, No. 92 C 2192, 1998 WL 11649 (N.D. Ill. Mar. 9, 1998), in support of their argument that Cox does not state an actionable equal protection claim. That case relied on French v. Owens, which did conclude:
> The rationality of a distinction between privileges for prisoners in the general population and those in protective custody goes to the fundamental purpose of such segregation. Protective segregation is offered to inmates for their safety, the safety of others in confinement, and to insure institutional security and order. To allow prisoners in protective custody to enjoy all of the same privileges to the same degree as those in the general population would eviscerate the nature of protective segregation. Because the differences in treatment among prisoners in protective segregation and the general population has a substantial, rational basis in the legitimate state interest of prison security, we hold that [the plaintiff's] rights to equal protection have not been abridged.

777 F.2d 1250, 1256 (7th Cir.1985). However, the District Court's determination in that case was based upon evidence at a trial that began on July 5, 1978, and ended on August 14, 1978, see French v. Owens, 538 F.Supp. 910, 911 (D.C. Ind. 1982), giving the court an ample evidentiary basis in assessing the defendant's reasons for the protective custody limitation, evidence which also informed the Seventh Circuit when it reviewed and reversed the trial court.

prison.[5]  In Nadeau the plaintiffs brought Eighth Amendment and equal protection claims.  Apropos the equal protection claims the First Circuit recognized the need to apply "a special version of the equal protection 'rational basis' standard."  Id. at 414.  With respect to the District Court's equal protection analysis the Panel stated:  "In the absence of a fundamental interest or suspect classification, the court recognized that the state may draw any distinction between persons, so long as the classification is rationally related to some permissible state goal."  Id. (citing New Orleans v. Duke, 427 U.S. 297, 303 (1976)).  In New Orleans v. Duke the United States Supreme Court opined: "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."  427 U.S. at 303; see also Heller v. Doe by Doe, 509 U.S. 312, 319-20 (1993) ("For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

"The state's power to draw distinctions between [protective custody] prisoners and the general population," the Nadeau Panel explained, is "always subject to the constitutional requirement that the distinction be rational rather than arbitrary and capricious."  561 F.2d at 416; see also Green v. McKaskle, 788 F.2d 1116, 1125 (5th Cir. 1986) (" Prison officials may, of course, arbitrarily determine whether to provide prisoners with privileges amounting to more than 'reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety.'  But the state's power to distinguish

---

[5]  The Panel described "life ... in protective custody ... [as], for the most part, boring and filled with inconvenience; the tedium [was] relieved on occasion with moments of terror."  Id. at 412.

between prisoners is always subject to the constitutional requirement that substantial and purposeful difference in treatment have some rational basis rather than being wholly arbitrary and capricious.") (internal citation omitted). Arriving at its decision to remand the case, the Nadeau Panel explained:

> While we have rejected the "penological purposes" test that dominated the suit below, this does not immunize the state prison from judicial supervision of a more traditional stripe. Prison administrators do not have unlimited authority over their charges. Even when they do not create barbaric or indecent conditions of confinement, prison officials are subject to a limited judicial check; their actions cannot be entirely arbitrary and capricious. O'Brien v. Moriarty, 489 F.2d 941, 944 (1st Cir. 1974). But the judgments of prison officials concerning the necessity of particular practices must be given great weight. Id. The proceedings in the district court, dominated as they were by the "penological purposes" test, did not focus on possible administrative or fiscal justifications for the challenged prison practices. The court must now consider such justifications to see whether they constitute a rational basis or are wholly without substance.

Id. at 419 (footnote omitted).

As this is a motion to dismiss the defendants have not yet presented the Court with "possible administrative or fiscal justifications for the challenged prison practices." Under the liberal pleading standard of Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) -- and heeding the counsel of Instituto de Educacion Universal Corp.v. United States Dept. of Educ., 209 F.3d 18, 24 n.4 (2000) -- Cox's allegation that his right to equal protection has been violated implicitly carries with it the allegation that the reasons for the different treatment have no rational basis; it is not his onus to set forth in the complaint the administrative and fiscal justifications that are surely in the ken of the defendants. And while ultimately the defendants will be accorded exceedingly wide latitude apropos these justifications, see Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)( "It is precisely in matters such as this, the decision as to which of many groups should be allowed to operate within the prison

walls, where, confronted with claims based on the Equal Protection Clause, the courts should allow the prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused."); Green, 788 F.2d at 1125 ("It may be highly unlikely that Green can justify his claim or raise a fact issue that the denial of his privileges met these requirements. Except for some denials of a fundamental right or use of a suspect classification, prison policy can be based on such considerations as administrative convenience, expense or security."); see also Flaherty v. Cunningham, No. Civ. 93-216-B, 1994 WL 485751, *3  (D.N.H. Sept. 2, 1994) (unpublished), it is not for the Court to conjure these justifications from thin air.

Nevertheless, the trial court does have discretion to dismiss the action based on a party's unexcused failure to comply with the local rule as long as the party to be so sanctioned has fair notice of the court's intended action and the sanction does not offend equity. Pomerleau v. West Springfield Public Schools, 362 F.3d at 145, n. 1; Dist. Me. Local R. 7(b).  Given Cox's failure to respond to the motion, I have determined that in this case it is appropriate to exercise discretion in this fashion.  A fellow prisoner, Victor Eric Loveitt, filed a virtually identical case (See Loveitt v. Maine State Prison, No. Civ. 05-172-B, filed November 4, 2005) and then filed a motion to voluntarily dismiss his case after the State responded to his complaint with a motion to dismiss identical to the one filed in this case.  The Court granted Loveitt's motion.   It appears Cox's lack of response to this motion indicates he, like Loveitt, decided that continuing with the litigation would be futile.

By the terms of this recommendation Cox and the State are given fair notice of the manner in which I have construed the complaint and Cox has ample opportunity to object to the recommended decision.  While I am not inclined to recommend dismissal for the reasons raised by the State, I am

7

nevertheless cognizant of the types of arguments the State might make should it be forced to substantively respond to this complaint. Given that I believe the complaint only has viability as an equal protection claim and given that the State need ultimately show only a rational basis for the differential treatment accorded protective custody inmates, it does not appear to me to be a case where equity would be offended by dismissal of the suit at this stage of the proceedings. It is worth noting that not only has Cox failed to respond to this motion to dismiss, but also during the pendency of this action he has also filed, and then deliberately abandoned, a second lawsuit involving a claim related to so-called "good-time" credits. <u>Cox v. Maine State Prison</u>, No. Civ. 05-185-B (filed December 1, 2005, judgment entered for defendant January 25, 2006).

## *Conclusion*

I recommend this motion to dismiss, because unopposed, be **GRANTED**.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) (1993) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 11, 2006    /s/ Margaret J. Kravchuk
         U.S. Magistrate Judge